RICHARDSON. The ANN D. See Cases Nos. 410 and 411.

RICHEY (EPPINGER v.). See Case No. 4,-505.

———

## Case No. 11,795a.

### The RICHMOND.

[29 Hunt, Mer. Mag. (1853) [1] 77.]

LIBEL BY MASTER FOR WAGES—SALE OF VESSEL—PRESUMPTIONS.

[1. Where, after the sale of a vessel, a libel was filed to recover for services as master and mate during several years preceding the sale, held, that the presumption was that the wages had been paid from the freight money earned on the several voyages in which the services were rendered.]

[2. Libelant, as agent of his father, induced the claimants to advance money to build a brig, the same to be repaid from her earnings. Libelant acted as master of the brig during several voyages, and afterwards as mate. The advances were not repaid, and the vessel became the property of the claimants by bills of sale, first of a part interest, and finally of the remainder. At the time of the sale, the claimants had no knowledge of any claim by libelant for wages, and he gave no notice thereof. Held, that he was estopped, and could not maintain his libel to recover wages.]

The libelant [Robert J. McKenzie] brings this suit to recover of the respondent, as owner of the brig Richmond, five months' wages as master, to wit:

| | |
|---|---:|
| From November 4th, 1847, to April 4th, 1848, at the rate of $50 per month | $260 00 |
| Less cash | 87 00 |
| Balance | $167 00 |
| Wages as mate of the same brig at $30 per month, from April 4th, 1848, to November 14th, 1849, 19 months and 10 days | 580 00 |
| Wages as mate of the same brig from May 27th, 1850, to January 28th, 1851, 8 months, at $30 | 240 00 |
| Wages as mate of the same brig from January 28th, 1851, to April 9th, 1851, at $35 per month. 2 months and 12 days | 83 94 |
| Total | $903 94 |
| Deduct the credit | 60 75 |
| This is the amount of the claim, and interest to be added | $843 19 |

[1] [This case was first published in July, 1853, but no information can be obtained as to the court, or district, or the judge by whom the decision was rendered.]

Means & Clark, of Boston, owners of the brig Richmond, come in and defend the claim, and they admit, in their answer that the libelant hath demanded of them payment of this claim, as alleged in the libel, and that payment was refused, but the respondents deny all knowledge of the services charged against their brig; and they allege, if services were performed as master or mate, that the same were rendered on the personal credit of William McKenzie, the former owner of the brig, and father of the libelant, and that no credit whatever was, by the libelant, ever given to the brig, and that no services were, by the libelant, performed for the brig or on her account. It is further alleged in the answer, that William McKenzie, of the state of Maine, while building this brig, received advancements in money to enable him to build said brig, and said advancements were made, at the request and with the knowledge of this libelant, to his father, William McKenzie, and that, on account of such advancements to William McKenzie, he did, in the month of September, 1847, execute and deliver to Means & Clark a bill of sale of half of the said brig, and afterwards, to wit, on the 13th of May, 1850, said William McKenzie executed and delivered to Means & Clark a bill of sale of the other half of said brig, all of which was then well known to this libelant.

BY THE COURT. The proof in the case, to sustain the libel, comes from the father of the libelant, William McKenzie, whose deposition has been read in evidence, and this deposition, uncontradicted and unexplained, goes far to sustain the allegations in the libel, and indeed supports it at all points. But the court cannot overlook the circumstances and proofs which counteract the influence of that testimony. These circumstances and proofs satisfy the court that the demand set up in the libel is an unjust demand. The legal presumption is that the wages have been paid by the freight money earned on the several voyages performed by the brig. It is an equitable presumption, also, that the wages are not due. The libelant was agent of the father, who procured the advancements to be made to him by Means & Clark to build the brig, and there has been satisfactory proof in the case that the earnings of the brig were to be paid over to Means & Clark, in the reduction of these advancements. This has not been done. The libelant was privy to that arrangement, and being master or mate of the brig, and constantly engaged in all matters with regard to the brig, with his father, it is fair to presume that this libelant was performing his services for the father to carry out the stipulations and understandings of the parties, that the earnings of the brig should be applied to reduce the debt of Means & Clark. This idea is strongly confirmed by the fact that, when each bill of sale was executed by William McKenzie to Means & Clark, that no mention was made by this libelant that he held a claim on the vessel. It is a general principle, founded on law and equity, recognized by all courts, that when a person stands by and witnesses the transfer of property from one man to another, and withholds all information of a claim of his own, he loses his right to the property thus transferred. He is bound, in such a case, to give notice of his claim, that the purchaser may not be deceived by his silence. In the present case, the libelant is the agent to procure the respondents to advance their money to his father on the credit of the brig; he undertakes, with his father, to aid in paying off this money, and then he stands by and sees the father transfer the brig to Means & Clark, without intimating any claim in his own behalf, and they take the brig as security for their debt.

It is too late for the libelant to set up a prior right to that which he has himself aided, and, as may be truly said, has been the principal instrument in placing on the brig, while he has permitted his own claim to lie dormant until the vessel passes into the hands of an innocent purchaser without notice. The father and son have so demeaned themselves, in regard to the claimants' rights, that it would be a fraud now to seek to divest the claimants of their title to the vessel. The libel must be dismissed, with costs.